IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

Plaintiff,

v.

SPRESIM ALIMI,

Defendant.

Case No. 3:16-cr-00028-TMB-1

ORDER ON DEFENDANT'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE,
SET ASIDE, OR CORRECT SENTENCE
BY A PERSON IN FEDERAL CUSTODY
[DKT. 118]

## I.    INTRODUCTION

The matter comes before the Court on Defendant Spresim Alimi's "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255" (the "Motion").[1] The United States filed an Opposition to the Motion, and Alimi filed a Reply.[2] The Motion is now fully briefed and ripe for resolution. The Court finds that a hearing is not necessary.[3] For the reasons discussed below, Alimi's Motion is **DENIED**.

## II.    BACKGROUND

### A.  Case and Underlying Conviction

In November 2015, investigators with the United States Air Force Office of Special Investigations ("AFOSI") learned that personnel on Joint Base Elmendorf-Richardson were illegally purchasing oxycodone pills from someone later identified as Alimi.[4] Through the use of

---

[1] Dkts. 118 (Motion); 118-4 (S. Alimi Decl.); 127 (Notice of Intent to Stand on *Pro Se* Motion).

[2] Dkts. 133 (Opposition); 156 (Reply).

[3] *See* D. Ak. HCR 8.1 (Evidentiary Hearing).

[4] Dkts. 76 at ¶¶ 11–14 (Revised Final Presentence Investigation Report ("PSR")); 156 at 3.

1

a confidential informant ("CI") AFOSI agents learned that Alimi owned and operated Alpina Auto Repair Shop ("Alpina Auto") in Anchorage[5] and was selling pills out of the business.[6] In December 2015, AFOSI notified a DEA Task Force Officer of the suspected drug dealing operation out of Alpina Auto and that suspected drug dealer and owner of the auto shop was Alimi.[7] Following surveillance and several controlled buys by CIs from Alimi at Alpina Auto, DEA officers obtained and executed search warrants at three Anchorage locations: (1) Alimi's residence; (2) Alpina Auto; and (3) a storage shed under Alimi's name at Midtown Storage.[8]

On March 9, 2016, upon execution of the search warrant at Alimi's residence, agents located several guns missing serial numbers, $88,146 in cash, and documents showing Alimi was the owner of Alpina Auto.[9] Also on March 9, 2016, after searching Alpina Auto, agents located multiple firearms—several of which had no serial numbers and others that were reported stolen—and Alimi's red "Snap-on Toolbox" containing, among other things, 4,366 30-milligram oxycodone pills and $1,500 in cash.[10] The same night, Alimi's storage shed at Midtown Storage

---

[5] Dkts. 26 at 4 (Plea Agreement); 76 at 1, ¶¶ 11–13. In his Motion and Declaration, Alimi disputes that he is the owner of Alpina Auto. Dkts. 118 at 2; 118-4 at 2.

[6] Dkts. 76 at ¶¶ 11–13; 118 at 2.

[7] Dkts. 76 at ¶¶ 14–15; 118 at 2.

[8] Dkts. 26 at 4–5; 76 at ¶¶ 16–24; 118 at 2–3.

[9] Dkts. 26 at 5; 76 at ¶¶ 21–22; 118 at 3.

[10] Dkts. 26 at 5; 76 at ¶ 23; 118 at 3.

2

was searched by agents who located a red Dodge Viper which had been purchased on January 8, 2016, for $125,500[11] with a $30,000 cash down payment provided by a family member of Alimi.[12]

Alimi was indicted by a grand jury for possession of oxycodone with intent to distribute.[13] On July 7, 2016, Alimi pleaded guilty to possession of oxycodone with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).[14] As a term of the Plea Agreement, Alimi agreed to waive "the right to appeal on all grounds contained in 18 U.S.C. § 3742" if the Court imposed a sentence that did not exceed the statutory maximum—twenty years imprisonment[15]—and "all rights to collaterally attack the resulting conviction(s) and/or sentence" with the exceptions of: (1) "any challenge to the conviction or sentence alleging ineffective assistance of counsel – based on information not now known to defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence," and (2) any "challenge to the voluntariness of the defendant's guilty plea."[16] As part of the factual basis, Alimi admitted that the $89,646 in cash represented proceeds from selling oxycodone, and that the Viper was also purchased with drug proceeds.[17]

---

[11] The Plea Agreement states that the Viper was purchased for $128,500. *See* Dkt. 26 at 5. However, at the Change of Plea Hearing, the purchase price was corrected to $125,500. Dkt. 106 at 23:8-17 (noting the correct value of the Viper was $125,500) (Change of Plea Hearing Tr.).

[12] Dkts. 26 at 5; 76 at ¶ 24; 118 at 3.

[13] Dkt. 2 (Indictment).

[14] Dkts. 26; 106.

[15] Dkt. 26 at 13; *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

[16] Dkt. 26 at 2, 13.

[17] Dkts. 26 at 6.

Follow the entry of plea hearing, Alimi fired his counsel, Rex Butler, and retained Vikram Chaobal.[18] Chaobal initially told the Court that Alimi would be filing a motion to withdraw from the Plea Agreement[19]; however, Chaobal subsequently advised the Court that Alimi wished to proceed to sentencing.[20] Chaobal ended his representation of Alimi, and the Court appointed new counsel; Assistant Public Defender Darrel Gardner assumed representation of Alimi.[21]

Alimi, now represented by Gardner, proceeded to sentencing.[22] At the January 2, 2018 Sentencing Hearing, the Court found that the seized cash and Dodge Viper down payment were properly converted to drug quantities and found a base offense level of 29—as stated in the PSR.[23] The Court further heard testimony and argument about whether a firearms and premises enhancement were warranted and found that Alpina Auto had been maintained by Alimi to distribute drugs, adjusting the base level offense to 31.[24] With a base offense level of 31 and a criminal history of IV, the Court noted the applicable Sentencing Guidelines range was 151–188

---

[18] Dkts. 32 (Butler's Motion to Withdraw); 37 (Chaobal's Notice of Appearance).

[19] Dkts. 51 (Minute Entry re Status Conference); 111 (Tr. Re Status Conference).

[20] Dkt. 56 (Notice of Intent to Continue and Not Withdraw Plea).

[21] *See* Dkts. 67–68; *see also* Dkt. 73 (Unopposed Motion to Continue Imposition of Sentence Hearing).

[22] *See* Dkts. 67–68; 73; 107 (Tr. of Sentencing Hearing); 113 (Sealed Tr. of Sentencing Hearing).

[23] *See* Dkts. 107 at 37–38 (applying two level premises enhancement to reach 31 base level offense); 156 at 7; *see also* Dkt. 76 at ¶ 40 (the base level offense of 29 included a firearms enhancement). Although the Court heard argument and did not explicitly conclude the firearms enhancement applied, the Court accepted the PSR recommendation and, based on the final offense calculation of 31, it appears this enhancement was included in the offense calculations. *See* Dkt. 107 at 37–38, 41–46.

[24] Dkts. 107 at 35–38; 156 at 7.

months.[25] The Court sentenced Alimi to a below-guidelines sentence of 136 months of imprisonment and three years of supervised release to follow.[26]

Despite the conditions in the Plea Agreement, Alimi appealed his conviction.[27] The Government moved to dismiss Alimi's appeal in light of the valid appeal waiver; the Ninth Circuit agreed the appeal waiver was valid and dismissed Alimi's appeal.[28]

### B. Section 2255 Motion

Alimi, proceeding *pro se*, filed the present Motion on May 17, 2019.[29] In his Motion, Alimi raises the following five grounds for relief:

(1) His first attorney and trial counsel, Butler, was ineffective for failing to advise Alimi on potential United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") calculations and for failing to argue that the increase of the drug quantity was based on known factual error;[30]

(2) His guilty plea was not entered knowingly and voluntarily;[31]

(3) Butler was ineffective for failing to file a motion to suppress evidence obtained via a defective search warrant.[32]

---

[25] Dkts. 107 at 38; 156 at 7.

[26] Dkts. 95 (Judgment); 107 at 50.

[27] Dkts. 100 (Notice of Appeal); 101 (Notice of Appeal).

[28] Dkt. 116 (Ninth Circuit Order re Dkt. 101); *see also* Dkt. 156 at 2.

[29] Dkt. 118.

[30] *Id.* at 7–11

[31] *Id.* at 11–13.

[32] *Id.* at 20–27. In his Motion, Alimi does not identify which attorney specifically failed to file a motion to suppress on his behalf. *See id.* In his Reply, Alimi clarifies it was Butler who failed to

5

(4)     His second attorney, Chaobal, was ineffective for failing to file a motion to withdraw Alimi's guilty plea;[33] and

(5)     His third attorney, Gardner, was ineffective for failing to object to and argue against sentencing enhancements under U.S.S.G. §§ 2D1.1(b)(1) and (b)(12) that were factually incorrect.[34]

Based on those five grounds for relief, Alimi requests that the Court vacate his sentence.[35]

On January 31, 2020, the Government filed its Opposition to the Motion.[36] The Government argues that Alimi's first claim against Butler is without merit because even if Butler incorrectly determined that only the actual oxycodone pills seized by law enforcement would be included in the relevant conduct, such a mistake would not amount to constitutionally defective performance; further, Alimi fails to demonstrate that he was prejudiced by this alleged ineffectiveness, especially given the sentence imposed complied with the terms of the Plea Agreement and applicable law.[37] The Government further argues that Alimi cannot show that his plea was not knowing and voluntary merely because the change of plea colloquy did not include

---

move to suppress certain evidence. Dkt. 156 at 14–26. Further, "the exclusionary rule generally does not apply to sentencing proceedings," *United States v. Haynes*, 216 F.3d 789, 801 (9th Cir. 2000), and, therefore, there can be no viable claims with respect to Chaobal and Gardner, who represented Alimi during the post-conviction stage. Accordingly, the claim can only apply to Butler, who represented Alimi at the pretrial and plea stages.

[33] Dkt. 118 at 13–14.

[34] *Id.* at 14–20.

[35] *Id.* at 27.

[36] Dkt. 133.

[37] *Id.* at. 7–9.

an express advisement about the Sentencing Guidelines range Alimi would face.[38] The Government points out that courts are not obligated under Federal Rule of Criminal Procedure ("Rule") 11 to advise a defendant of applicable offense level under the Sentencing Guidelines or the probability that a defendant may receive one sentence or another.[39] Further, the written Plea Agreement expressly advised Alimi that his admission in the factual basis could be used for imposition of the sentence.[40] The Government also argues that based on the change of plea colloquy and the present Motion, it is clear that Alimi is a fluent English speaker and any argument that a language barrier precluded him from entering a knowing and voluntary plea should be rejected.[41]

The Government further states that Chaobal provided clear justification to the Court and the Government why he did not pursue withdrawal of Alimi's guilty plea and, Alimi cannot show Chaobal's performance was deficient or that Alimi was prejudiced by Chaobal's decision not to file a meritless motion.[42]

The Government argues that to show Butler was ineffective for failing to file a motion to suppress, Alimi must show that "every competent attorney would have *known* that they would have succeed" or that "no competent attorney would think a motion to suppress would have failed."[43] The Government argues that Alimi has failed to show that the theoretically suppressible

---

[38] *Id.* at 10–11.

[39] *Id.*

[40] *Id.* at 11 (citing Dkt. 26 at 4).

[41] *Id.* at 11–12.

[42] *Id.* at 12–13.

[43] *Id.* at 17–18 (emphasis in original internal quotation marks and citation omitted).

evidence was so significant "that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[44] Here, the Government argues Alimi cannot show that Butler knew about the alleged *Miranda* violation of Alimi admitting to ownership of the toolbox or that there is reason to think that this putative admission would have played any meaningful role in the Government's proof, given all the other overwhelming evidence against Alimi, such that suppression would have altered Alimi's calculus as to whether to plead guilty.[45] The Government responds to Alimi's argument about a defective search warrant by stating that any argument to suppress evidence on the bases raised by Alimi would have been fruitless and Butler's failure to raise such an argument was not ineffective.[46] Also, the original warrant was clearly signed by a magistrate such that this challenge fails.[47]

Finally, regarding Alimi's claim that Gardner was ineffective for failing to effectively rebut the sentencing enhancements for (1) maintaining a premises for distributing narcotics and (2) possessing firearms during the offense, the Government argues that Gardner did object to and argue against the premises enhancement.[48] Further, there is no indication that this enhancement played any role in the sentence Alimi received.[49] Additionally, Alimi does not identify anything

---

[44] *Id.* at 18 (internal quotation marks and citations omitted).

[45] *Id.* at 19. The Government also notes that insofar as Alimi attempts to argue the alleged *Miranda* violation lead to the discovery of physical evidence, this claim fails because Alimi does not allege his statement was involuntary and a *Miranda* violation does not require suppression of the fruits of a suspect's unwarned but voluntary statements. *Id.* at 19–20.

[46] *Id.* at 19–21.

[47] *Id.* at 20–22.

[48] *Id.* at 14–17.

[49] *Id.* at 17.

Gardner did wrong or suggest how Gardner should have acted differently, and Alimi does not claim Gardner knew about Alimi's assertion that the firearms did not belong to him.[50] Alimi cannot show he was prejudiced by Gardner's performance because any objection that Gardner could have hypothetically made would have been overruled.[51] Therefore, the Government argues that Alimi's § 2255 Motion should be denied.[52]

Alimi, now represented by counsel, filed a Reply and Memorandum of Points and Authorities on September 17, 2020.[53] In reply, Alimi argues that Butler essentially abandoned Alimi prior to his change of plea hearing and that Butler's representation was clearly deficient because a reasonable lawyer would have understood that under the Sentencing Guidelines, Alimi's offense would be "greatly enlarged" given the dollar amounts alleged to be drug proceeds.[54] Alimi argues that a reasonable lawyer would have investigated the source of the funds seized by the Government, would have argued not all of the monies were drug proceeds, and would have advised the Government and probation office to not include all of the proceeds in the calculation of the Base Offense Level.[55] Instead, Alimi argues, "Butler apparently had no idea those same sums would be converted to drug quantit[ies] under the guidelines" and that Butler "has not denied that he failed to consider the fact that the additional dollar amounts would be converted to drug

---

[50] *Id.* at 14–16.

[51] *Id.* at 14–17.

[52] *Id.* at 1–2, 22.

[53] Dkt. 156.

[54] *Id.* at 8–10, 12–13.

[55] *Id.* at 12–13.

quantities and the Government tacitly acknowledges that it did not consider that fact either."[56] Alimi argues it appears Butler failed to consider this, despite Alimi telling Butler that the majority of the money seized did not belong to him and Butler's assurances that Alimi would not be held responsible for more than approximately $5,000.[57]

Additionally, Alimi argues it appears Butler also failed to read all of the discovery and failed to note that Alaska State Trooper Joel Miner ("Trooper Miner") continued to interview Alimi after Alimi had asserted his Fifth Amendment right.[58] Butler should have noted this Fifth Amendment violation and moved to suppress any evidence seized from the tool box after Alimi admitted ownership.[59] Further, Alimi argues Butler should have realized the warrant to search the auto shop, and ultimately the toolbox, was not supported by probable cause and should have moved to suppress the fruits of this search.[60] Butler also failed to discuss with or to advise Alimi that a two level enhancement for maintaining a premises for the purpose of facilitating narcotics distribution would apply.[61]

Alimi also argues that Chaobal and Gardner should have known Alimi pleaded guilty "based on woefully inadequate representation" and should have taken corrective measures to withdraw Alimi's plea "but failed to do so, even after [Alimi] requested that they do so."[62] Alimi

---

[56] *Id.* at 9, 13.

[57] *Id.* at 9.

[58] *Id.* at 10, 16–22.

[59] *Id.* at 16, 20–22.

[60] *Id.* at 21–26.

[61] *Id.* at 26–28.

[62] *Id.* at 28.

argues any motion to withdraw would likely have been granted because Alimi demonstrated fair and just reasons.[63] Alimi argues he was prejudiced by this inadequate representation because but for counsel's errors, he would not have pleaded guilty or "waived his appeal and collateral attack rights."[64]

Therefore, Alimi seeks to vacate the sentence and be resentenced with new counsel.[65] Because there is no declaration from Butler in the record, Alimi argues this omission alone warrants an evidentiary hearing.[66]

### III.    LEGAL STANDARD

Under 28 U.S.C. § 2255, a district court may "vacate, set aside, or correct" a sentence of a federal prisoner that was imposed in violation of the Constitution or a law of the United States.[67] On a motion for relief under 28 U.S.C. § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[68] If a court determines that relief is warranted, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[69]

---

[63] *Id.* at 28–30.

[64] *Id.* at 30 –33.

[65] *Id.* at 34; Dkt. 118 at 27.

[66] Dkt. 156 at 9, 34.

[67] 28 U.S.C. § 2255(a).

[68] 28 U.S.C. § 2255(b).

[69] *Id.*

11

However, "the district court may deny a § 2255 motion without holding an evidentiary hearing if '(1) the petitioner's allegations, accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or allege conclusions rather than statements of fact.'"[70] Thus, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."[71] "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts."[72]

Furthermore, "where the issue of credibility can be 'conclusively decided on the basis of documentary testimony and evidence in the record,' no evidentiary hearing is required."[73] In

---

[70] *United States v. Geozos*, No. 3:06-CR-082-RRB-JDR, 2010 WL 4942571, at *2 (D. Alaska Nov. 24, 2010) (quoting Dhillon Khosla, 28 U.S.C. § 2255 Checklist/Updated Supplement to Habeas Corpus Outline p.5 (2005)); *see also Baumann v. United* States, 692 F.2d 565, 571 (9th Cir. 1982) ("Mere conclusory statements by the petitioner do not justify a hearing.") (citation omitted); *Lopez-Lopez v. United States*, No. CR 05-1242 TUC-DCB, CV 06-489 TUC-DCB, 2006 WL 2850055, at *1 (D. Ariz. Sept. 28, 2006) ("A district court shall summarily dismiss a § 2255 petition '[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief.'" (quoting Rule 4(b), Rules Governing § 2255 Actions)); *Bonds v. United States*, No. C18-0131-JCC, 2018 WL 2216089, at *2 (W.D. Wash. May 15, 2018); *see also Shah v. United States*, 878 F.2d 1156, 115 (9th Cir. 1989) (internal quotation marks and citation omitted) ("Where a § 2255 motion is based on alleged occurrences outside the record, no hearing is required if the allegations, 'viewed against the record, either fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'") (quoting *Marrow v. United State*s, 772 F.2d 525, 526 (9th Cir. 1985)).

[71] *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

[72] *Shah*, 878 F.2d at 1159 (internal quotation marks and citation omitted).

[73] *Id.* at 1159 (quoting *United States v. Espinoza,* 866 F.2d 1067, 1069 (9th Cir. 1989)).

general, "[s]olemn declarations in open court carry a strong presumption of verity."[74] "Where a prisoner's motion presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required."[75]

## A. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is rooted in the Sixth Amendment right to counsel, which extends to the plea-bargaining stage of a criminal proceeding.[76] A defendant asserting a claim of ineffective assistance of counsel must satisfy the two-pronged test defined in *Strickland v. Washington*.[77] Under that test, a defendant must show that (1) counsel's performance was deficient, *i.e.*, "fell below 'an objective standard of reasonableness;'"[78] and (2) that the deficiency was prejudicial to the defense, *i.e.*, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[79]

In addressing the first element, the performance prong, judicial scrutiny of an attorney's performance, especially in hindsight, is highly deferential.[80] Attorney conduct should be evaluated from the attorney's perspective at the time of the representation.[81] Generally, an attorney's

---

[74] *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987) (citations and internal quotation marks omitted).

[75] *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986); *see also United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

[76] *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

[77] *See* 466 U.S. at 690–94.

[78] *Silva v. Woodford,* 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 688).

[79] *Strickland*, 466 U.S. at 694; s*ee also United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988).

[80] *Strickland*, 466 U.S. at 689.

[81] *Id*.

Case 3:16-cr-00028-TMB   Document 172   Filed 03/17/21   Page 13 of 40

performance is strongly presumed to fall within the wide range of reasonably professional competent assistance.[82] "The court must [] determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."[83]

The second prong, prejudice, "focuses on the question [of] whether counsel's deficient performance renders the result of . . . the proceeding fundamentally unfair."[84] A reasonable probability that the results of the proceeding would have been different is "a probability sufficient to undermine confidence in the outcome."[85] A defendant must make a greater showing than simply asserting an error that could theoretically have some effect on the outcome of the proceeding; but, a showing by a preponderance of the evidence is not required by *Strickland*.[86]

Ultimately, a defendant must prove *both* deficient performance and consequent prejudice to succeed in establishing ineffective assistance.[87] The court may evaluate one or both prongs in determining whether to grant a defendant's habeas petition on these grounds. However, the court need not inquire whether an attorney's performance was deficient if such alleged deficiency could not have resulted in prejudice under *Strickland*.

/ / /

---

[82] *Id.*

[83] *Id.* at 690.

[84] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[85] *Strickland*, 466 U.S. at 694.

[86] *Duncan v. Ornoski*, 528 F.3d 1222, 1246 (9th Cir. 2008).

[87] *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995) ("[P]etitioner bears the burden of establishing both.") (emphasis added).

14

/ / /

**B. Ineffective Assistance of Counsel in Guilty Plea**

"Because 'an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney' . . . counsel [has] a duty to supply criminal defendants with necessary and accurate information."[88] Where a habeas petitioner alleges ineffective assistance of counsel when pleading guilty, "'[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative causes of action open to the defendant.'"[89]

Collateral attacks predicated upon "[h]indsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial."[90] Accordingly, collateral review of such convictions exists only in "strictly limited" circumstances.[91] For a guilty plea, a petitioner can only "attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases."[92] In addition, to satisfy the prejudice prong of the *Strickland* standard

---

[88] *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (quoting *Brady v. United States*, 397 U.S. 742, 748 n.6 (1970)).

[89] *Signori*, 844 F.2d at 638 (internal quotation marks altered) (quoting *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25 (1970))).

[90] *Premo v. Moore*, 562 U.S. 115, 132 (2011).

[91] *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citation omitted); *United States v. Timmreck*, 441 U.S. 780, 783–84 (1979)) (stating that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas" and concluding defendant "had not suffered any prejudice inasmuch as he had received a sentence within the maximum described to him at the time the guilty plea was accepted.").

[92] *Signori*, 844 F.2d at 638 (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *see also United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005).

15

in the context of a guilty plea, a defendant must "show the outcome of the plea process would have been different with competent advice," in other words, "'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'"[93]

## IV. ANALYSIS

Alimi's Motion raises five grounds for relief, and the Court discusses each in turn. First, the Court concludes Alimi cannot show Butler was ineffective for (1) failing to advise about and argue against an allegedly factually incorrect calculation regarding the drug proceeds seized, and (2) failing to file motions to suppress various evidence. Further, Butler's counsel was not so deficient as to render Alimi's plea involuntary. Alimi also cannot show Chaobal, in failing to withdraw Alimi's guilty plea, provided deficient representation. Additionally, Alimi cannot show Gardner performance was constitutionally deficient because Gardner did not sufficiently argue against a firearm and a premises enchantment. Finally, an evidentiary hearing is unnecessary to resolve Alimi's claims. Accordingly, Alimi's Motion is **DENIED**. Nevertheless, the Court will grant a Certificate of Appealability as to the issue of Butler's representation and advisement on Sentencing Guidelines calculations

### A. Whether Butler Was Ineffective for Failing to Accurately Advise Alimi Regarding Potential Sentencing Guidelines Calculations and for Failing to Argue Against a Baseline Increase Based on Allegedly Factually Incorrect Calculations

Alimi asserts that Butler misled him about Sentencing Guidelines calculations and "failed to inform [Alimi] that the Court must calculate the guidelines correctly" and that "the money found

---

[93] *Lafler*, 566 U.S. at 163 (quoting *Hill*, 474 U.S. at 59); *United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996) (A claim of ineffective assistance used to attack the validity of a guilty plea may be sustained where a petitioner establishes that the ineffective performance "affected the outcome of the plea process such that absent the erroneous advice, he would have insisted on going to trial.") (citation and internal alterations and quotation marks omitted).

16

in the safe at his home could all be construed as drug proceeds ($89,646), which could possibly result in the District Court converting all the money into a higher drug quantity."[94] Further, Alimi appears to argue his interest in the Dodge Viper was misunderstood or miscalculated by the Court.[95] Alimi argues that a reasonable lawyer would have investigated the source of those funds, would have argued not all of the monies were drug proceeds, and would have advised the Government and probation office to not include all of the proceeds in the calculation of the Base Offense Level.[96] Alimi argues it appears Butler failed to consider that dollar amounts would be converted to drug quantities, despite Alimi telling Butler that the majority of the money seized did not belong to him, and Alimi relied on Butler's assurances that Alimi would not be held responsible for more than approximately $5,000.[97]

Alimi argues that the author of the PSR and, consequently, the Court, improperly converted money that Alimi did not possess an ownership interest in the drug proceeds that were then used to increase Alimi's base level offense from 28 to 30.[98] A new argument Alimi raises in reply is that Butler also failed to discuss with or advise Alimi that a two level enhancement for maintaining a premises for the purpose of facilitating narcotics distribution would apply.[99]

---

[94] Dkt. 118 at 7.

[95] *See id.* at 9–10. At his Change of Plea Hearing, Alimi also stated that he was a co-owner of the Viper, along with his uncle, and the Court assured Alimi that the forfeiture only applied to Alimi's ownership interest. Dkt. 106 at 15.

[96] Dkt. 156 at 12–13.

[97] *Id.* at 9, 13.

[98] *Id.* at 12–13; Dkt. 118 at 5, 7, 12 (citing PSR at ¶¶ 11–12, 29–32).

[99] *Id.* at 26–28.

In support of his argument, Alimi attaches a Declaration.[100] In his Declaration, Alimi states that he did not realize that the words "'purchased in part with the proceeds'" would "translate into 'ghost dope.'"[101] Alimi states that prior to accepting the Plea Agreement, Butler provided him "with several document[s], including correspondence with [Butler's] law office" and the Government "which show that [parties] were all on the same page, calculating the amount of pills at 4000" such that Alimi felt "secure" that his sentence would only reflect this quantity.[102] Alimi further declares that Butler knew that $70,000 of the amount seized from Alimi's home belonged to Alimi's wife and that Butler told Alimi "there will be no consequences for admitting all the money in the [P]lea [A]greement."[103] Additionally, Alimi declares his uncle, Rahman Alimi, had a $25,080 legal stake in the Dodge Viper, and only $4,920 that Alimi had paid to his uncle came from the sale of drugs—though Alimi does not indicate whether any of his attorneys were aware of this arrangement.[104]

Alimi also attaches a declaration of his wife, Bessa Alimi, in which she states, of the $89,646 seized from the Alimis' home safe, $70,000 was Bessa Alimi's own "legally earned income[.]"[105] Alimi attaches a declaration of his uncle, Rahman Alimi, in which Rahman Alimi states he co-owned the 2016 Dodge Viper with his nephew and had made the $30,000 down

---

[100] Dkt. 118-4.

[101] *Id.* at 2.

[102] *Id.*

[103] *Id.* at 3.

[104] *Id.* at 2.

[105] Dkt. 118-1 at 2 (B. Alimi Decl.).

Case 3:16-cr-00028-TMB   Document 172   Filed 03/17/21   Page 18 of 40

payment from his own "legally earned funds."[106] Rahman Alimi also declares that he had an agreement that Alimi would reimburse him all the payments and at the time the vehicle was seized Alimi had made a total of 3 payments totaling $4,920 such that Rahman Alimi "maintained [a] $25,080 interest in the down payment."[107] Alimi also attaches email correspondence between Butler's support staff and the Government indicating Butler had not yet had an opportunity to answer Alimi's questions and seeking an extension of time to discuss the Government's offer.[108] Included in the correspondence is a note from the Supervising U.S. Probation Officer which states that the 4,000 pills seized result in a base offense level calculation of 30.[109] Also included is a sheet with notations, but no other information regarding its source, calculating the base offense level at 28 for the 4,000 "Roxy" (oxycodone) pills.[110]

Paragraph 29 of the PSR states:

[Alimi] was responsible for $119,646 in drug proceeds, and 4,388 of Oxycodone pills. The investigation revealed that [Alimi] sold six Oxycodone pills for $210 to the CI, which equates to $35 per pill, and therefore the $119,646 in drug proceeds converts to 3,418.50 of Oxycodone pills. As a result, the total amount of pills attributed to [Alimi] is 7,806.50.[111]

Alimi expressly admitted under oath that the "$89,646 in cash found at his home and business were proceeds from the distribution and sale of Oxycodone."[112] This demonstrates that

---

[106] Dkt. 118-3 (R. Alimi Decl.).

[107] Id.

[108] Dkt. 118-2 (Email Correspondence).

[109] Id. at 4.

[110] Id. at 5.

[111] Dkt. 76 at ¶ 29.

[112] Dkts. 26 at 6; 106 at 23–24.

Alimi did in fact understand that he was acknowledging that the seized money represented drug proceeds. Further, in his Motion, Alimi seems to acknowledge that some additional quantity was appropriate, even if he disagrees with the ultimate calculation in the PSR.[113]

Moreover, Alimi has failed to demonstrate prejudice. Assuming Butler concluded that only the actual oxycodone seized by law enforcement would be included in relevant conduct, this inaccurate prediction does not rise to the level of ineffective assistance of counsel.[114] Alimi seems to acknowledge that under the terms of the Plea Agreement, his relevant conduct could include, by his own calculation, 5,067 oxycodone pills, and 1,018.40 kilograms of converted drug weight.[115] Alimi's own calculation amounts to more than 1,000 kilograms, which results is the same offense level of 30 as was actually applied in the PSR.[116] If Butler failed to properly calculate and advise Alimi regarding money-to-drug conversion, any failure on Butler's part to realize how the admitted drug proceeds could factor into relevant conduct was ultimately irrelevant to the Sentencing Guidelines analysis in the actual case.

---

[113] *See* Dkt. 118 at 8–11.

[114] *See Iaea*, 800 F.2d at 865 (9th Cir. 1986) ("[A] mere inaccurate prediction [about sentencing exposure], standing alone, would not constitute ineffective assistance."); *see also McMann v. Richardson*, 397 U.S. 759, 770 (1970) (The Sixth Amendment right to effective assistance of counsel "is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.").

[115] Dkt. 118 at 10–11.

[116] U.S.S.G. § 2D1.1(c)(5) (Drug Quantity Table: base offense level 30 for "At least 1,000 KG but less than 3,000 KG of Converted Drug Weight.") (emphasis omitted); Note (K) to Drug Quantity Table ("The term 'Converted Drug Weight,' for purposes of this guideline, refers to a nominal reference designation that is used as a conversion factor in the Drug Conversion Tables set forth in the Commentary below, to determine the offense level for controlled substances that are not specifically referenced in the Drug Quantity Table or when combining differing controlled substances."); *see also* Dkt. 76 at ¶ 32.

20

Additionally, because the Court thoroughly and accurately explained the terms of the Plea Agreement, Alimi affirmed under oath that he understood and wanted to accept them, and the sentence imposed fully complied with the terms of the agreement and the applicable law, Alimi cannot show he was prejudiced by Butler's representation. The Government's offer to Alimi outlined every material term of the Plea Agreement, including that Alimi could be punished by imprisonment for up to 20 years and that the Court would calculate and consider the Sentencing Guidelines range, but that this calculation was not binding on the Court.[117] The offer also expressly advised Alimi that because the Court was not bound by sentencing recommendations, he "may not withdraw from this agreement or the guilty plea if the Court rejects the parties' sentencing recommendations at the sentencing hearing."[118] Alimi then appeared before this Court and was placed under oath. Alimi stated he had read the Plea Agreement, understood its terms and voluntarily accepted the agreement, and confirmed he was satisfied with Butler's representation.[119] He was again correctly advised of the penalty range he would face, and the role the Sentencing Guidelines play in determining what sentence the Court actually imposed.[120] Alimi swore that he understood these points and confirmed that he had not received any promises beyond what was contained in the written Plea Agreement.[121]

---

[117] Dkt. 26 at 6, 9.

[118] *Id*. at 3. Further, in his Declaration about a conversation with subsequent counsel, Chaobal, it appears he read and clearly understood what the Court was considering in advance of sentencing. *See* Dkt. 118-4 at 3.

[119] Dkt. 106 at 7–8, 13–14, 19–20.

[120] *Id.* at 10–11, 20–21.

[121] *Id*. at 20; *see also id.* at 23–24 (Alimi noting the value of the Dodge Viper was $125,500 and agreeing with the factual basis in the Plea Agreement the value of the pills seized was $150,000).

Alimi was fully advised that the final Sentencing Guidelines calculation (and the final sentencing decision) would be made by the Court, that his attorney could not guarantee that any recommendation would be followed, and that he would be bound be the agreement even if the sentence was harsher than he preferred. Because the Court thoroughly and accurately explained the terms of the agreement, Alimi affirmed under oath that he understood and wanted to accept them, and the sentence imposed fully complied with the terms of the agreement and the applicable law, Alimi cannot demonstrate he was prejudiced by Butler's performance in this respect.[122]

Alimi also argues in his Reply that Butler failed to accurately advise him that a two point enhancement for maintaining a premises for the purpose of facilitating narcotics distribution would apply.[123] Alimi states that Butler "had absolutely no idea such a thing was possible and failed to discuss the possibility" with Alimi.[124] Alimi attaches no support for this argument, and in his Declaration, Alimi does not raise this as an area of misunderstanding or confusion.[125] Further, a premises enhancement was far from a foregone conclusion. It was not included in the PSR recommendations and was debated vigorously at sentencing by both parties. Assuming Alimi's allegations are true, a failure to predict that the Government might seek certain enhancements and advise a defendant of such, can be cured where a court instructs a defendant regarding the

---

[122] *See, e.g.*, *Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007) (citing *Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir. 1990) (holding that the petitioner "suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court")); *United States v. Thornton*, 23 F.3d 1532, 1533–34 (9th Cir. 1994) (per curiam); *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987).

[123] Dkt. 156 at 26–28.

[124] *Id.* at 27.

[125] *See* Dkts. 118; 118-4.

applicable mandatory maximum and minimum sentences, the advisory nature of the Sentencing Guidelines, and the possibility the court could impose a more severe sentence than anticipated.[126] Here, the Court advised Alimi regarding the above possibilities, curing any potential prejudice regarding the premises enhancement.

As to Butler's alleged failure to argue against the offense baseline increase based on factually incorrect calculations, the Court directly asked Alimi whether the factual allegations in the Plea Agreement were correct and whether he accepted them. Given Alimi's admission, it is unsurprising Butler did not offer argument regarding these facts. The Court, in reviewing Butler's actions, should "neither second-guess counsel's decisions, nor apply the fabled [20-20] vision of hindsight."[127] Accordingly, Alimi has failed to show Butler provided ineffective assistance of counsel with respect to Butler's advice and argument regarding applicable Sentencing Guidelines.[128]

**B. Whether Butler Was Ineffective for Failing to File a Motion to Suppress Alimi's Statements During the Search and Items Found in the Red Toolbox.**

Alimi next argues that Butler was ineffective for failing to file motions to suppress his statements regarding ownership of the red toolbox and fruits of this search.[129] Alimi also argues

---

[126] *See Soto v. United States*, Nos. CV F 08–0401 AWI, CR F 06–0315–06 AWI, 2009 WL 1862454, at *10 (E.D. Cal. June 29, 2009), *aff'd sub. nom. United States v. Soto*, 496 F. App'x 708 (9th Cir. Oct. 2, 2012); *United States v. Chavez*, 40 F. App'x 482, 484 (9th Cir. June 6, 2002).

[127] *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994).

[128] *See United States v. Palomba*, 31 F.3d 1456, 1460–61 (9th Cir. 1994).

[129] Dkts. 156 at 10, 16–22; 118 at 20–26.

23

Butler should have realized the warrant to search the auto shop, and ultimately the toolbox, was not supported by probable cause and should have moved to suppress the fruits of this search.[130]

Specifically, Alimi argues there were material omissions in the search warrant with regard to Trooper Miner's interviews of confidential informants, including knowledge provided by an informant about Alimi visiting his family abroad and leaving someone in charge of the drug sales out of Alpina Auto, and Trooper Miner's failure to include information about the red toolbox.[131] Alimi also argues the search warrant lacked particularity because the affidavit in support did not mention the locked toolboxes, the red toolbox did not "have any markings or other indications that it belonged to" Alimi, and the warrant was facially overbroad.[132]

When a defendant has entered a plea agreement, analyzing whether counsel should have filed a motion to suppress is a fraught exercise, both because "the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real" and due to the "special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial."[133] Accordingly, it is "a most substantial burden on the claimant to show ineffective assistance" in this context.[134] A habeas petitioner must show not only that the

---

[130] Dkt. 156 at 21–26.

[131] Dkt. 118 at 22–23.

[132] *Id.* at 25–26; Dkt. 156 at 22–26 (noting Trooper Miner was informed by his confidential informant that Alimi stored drugs and money in a red toolbox, but Miner's affidavit "deliberately failed to include any reference to the red tool box, evidencing that [Miner] either did not believe the [informant] to be reliable . . . or that he did not believe the [informant's] account otherwise supportable[.]").

[133] *Premo* 562 U.S. at 125.

[134] *Id.* at 132.

motion to suppress would have succeeded but "that no competent attorney would think a motion to suppress would have failed[.]"[135] Further, a defendant who pleads guilty "does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence."[136] Rather, he must show "'a reasonable probably that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[137]

    1. *Miranda* Motion

In support of Alimi's argument that Butler was ineffective for failing to file a motion to suppress statements and evidence obtained following an alleged *Miranda* violation, Alimi states in his Declaration that on March 9, 2016, Trooper Miner gave Alimi his *Miranda* warnings while executing a search warrant of Alpina Auto Shop.[138] Alimi declares he told Officer Miner "'I want to speak to my lawyer, I have nothing to say,'" but that Trooper Miner continued to ask Aimi questions about the ownership of several toolboxes in the shop.[139] Alimi declares he told Trooper Miner "'the red toolbox is mine'" and after being asked for the keys told Trooper Miner "'the keys for the red toolbox are in my pocket . . . the other toolboxes are not mine.'"[140] Alimi also attaches what he labels "Officer Joel Miner's Report, Gov. Bate-Stamped 00799."[141] In the Report, Trooper

---

[135] *Id*. at 124

[136] *Id*. at 129.

[137] *Id*. at 132 (quoting *Hill*, 474 U.S. at 59)

[138] Dkt. 118-4 at 3.

[139] *Id.*

[140] *Id.*

[141] Dkt. 118-5 (Miner's Report–00799).

Case 3:16-cr-00028-TMB   Document 172   Filed 03/17/21   Page 25 of 40

Minor states he attempted to interview Alimi, and after providing Alimi with the search warrants and reading Alimi his Miranda rights, Alimi declined to answer any questions.[142] Trooper Miner states he advised Alimi he would not ask him any questions "but that because of the search warrant, [law enforcement] would appreciate [Alimi's] assistance in expediting the search and minimizing any damage to property."[143] Trooper Miner states he advised Alimi that law enforcement "would be searching any locked vehicles[,] toolboxes[,] and safes on the premises either using keys or through forcing locks if necessary" and asked "where the keys were for a red Snap-On toolbox," to which Alimi stated "the key was in his pocket."[144]

Alimi has not shown "no competent attorney would think a motion to suppress would have failed"[145] or, put another way, that a competent attorney would have known the motion would succeed. First, there is nothing indicating that Butler knew about the alleged *Miranda* violation of Alimi admitting to ownership of the toolbox. Additionally, it is unclear this admission of ownership would have played any meaningful role in the Government's proof, given the other evidence against Alimi, such that suppression of this statement regarding ownership of the toolbox would have altered Alimi's calculus as to whether to plead guilty.[146] Further, insofar as Alimi argues Butler should have moved to suppress the fruits of this search based on this alleged *Miranda* violation, this argument also would have failed. Alimi does not allege his statement to Trooper

---

[142] *Id.* at 2.

[143] *Id.*

[144] *Id.*

[145] *Premo* 562 U.S. at 124.

[146] *E.g.*, Dkt. 107 at 18 (Trooper Miner's testimony that a CI identified the toolbox as belonging to Alimi and containing drugs).

Case 3:16-cr-00028-TMB   Document 172   Filed 03/17/21   Page 26 of 40

Miner was involuntary and a *Miranda* violation does not always require suppression of the fruits of a suspect's unwarned but voluntary statements.[147] Alimi has failed to show that the theoretically suppressible evidence was so significant "that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[148] Alimi cannot show Butler was ineffective for failing to file a motion to suppress Alimi's statement regarding ownership of the toolbox or the fruits obtained following the statement.

2. <u>Search Warrant</u>

In support of Alimi's argument that Butler was ineffective for failing to file a motion to suppress because the search warrant was defective, Alimi also attaches Reports by Trooper Miner[149] and the search warrant and affidavit in support of the warrant for Alpina Auto.[150] Alimi's primary argument is that Trooper Miner omitted material facts from the search warrant because he failed to include information from an informant who "believed Alimi stored drugs and money at the shop including a red toolbox . . . [and] believed the drugs were stored in one of the lockable flat drawers . . . [and that] Alimi stor[ed] drugs in a coffee can or in a desk in the front room."[151]

---

[147] *See United States v. Patane*, 542 U.S. 630, 634, 639 (2004) (plurality opinion); *id.* at 645 ("Admission of nontestimonial physical fruits . . . does not run the risk of admitting into trial an accused's coerced incriminating statements against himself. In light of the important probative value of reliable physical evidence, it is doubtful that exclusion can be justified by a deterrence rationale[.]") (Kennedy, J., concurring in the judgment); *see also United States v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007) (noting "*Patane* plurality and concurrence agreed, at least, that *Miranda* does not require the exclusion of physical evidence that is discovered on the basis of a voluntary, although unwarned, statement. As several of our sister circuits have recognized, this narrow agreement is the holding of *Patane*.").

[148] *See Hill*, 474 U.S. at 59.

[149] Dkts. 118-5; 118-6 (Miner's Report–00795).

[150] Dkt. 118-7 (Search Warrant & Search Warrant Aff.).

[151] Dkt. 118-6 at 2 (capitalization normalized).

To prevail on a claim regarding material omissions, a defendant must "make a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading"[152] As the Government correctly points out, the omitted evidence is arguably relevant, but the fact that that an informant had detailed and specific knowledge about Alimi's illegal operation *strengthens* the probable cause for a search warrant. Moreover, concealing the information was not necessary to a finding of probable cause, which is what Butler would have needed to prove to succeed on a motion to suppress.[153] Thus, Butler's failure to file such a motion does not rise to the level of ineffective assistance of counsel.

Alimi's argument that Butler was ineffective for not complaining regarding law enforcement agents opening locked containers was outside of the purview of the warrant also fails. To provide effective assistance of counsel, Butler was not required to raise a non-meritorious challenge; the parameters of the search warrant clearly allowed law enforcement to open containers on the premises.[154] Also, to the extent Alimi argues the original search warrant was defective

---

[152] *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), *op. amended* 769 F.2d 1410 (9th Cir. 1985); *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978) (On a motion to suppress, a defendant must make an offer of proof showing both that the statement or omission in the affidavit supporting the search warrant application was deliberately false or demonstrated reckless disregard for the truth, and that it was essential to the finding of probable cause.).

[153] *See Premo*, 562 U.S. at 124; *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir. 1988).

[154] *See United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984) ("It is axiomatic that if a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein belonging to the person occupying the premises if those effects might contain the items described in the warrant.") (citations omitted). Similarly, Alimi's overbreadth or lack of particularity arguments fail, and it would have been reasonable for counsel to not pursue such challenges. *See United States v. Alexander*, 761 F.2d 1294, 1301 (9th Cir. 1985) (warrant authorizing search of entire ranch but not detailing description of individual buildings to be searched was not overly broad); *see also United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991).

Case 3:16-cr-00028-TMB   Document 172   Filed 03/17/21   Page 28 of 40

because it lacked a magistrate's signature,[155] the warrant was signed and the signature redacted such that this challenge fails.

Accordingly, for the foregoing reasons, Butler's failure to file a motion to suppress evidence seized from the search of Alpina Auto or to otherwise challenge the search warrant does not constitute ineffective assistance of counsel.

### C. Whether Butler Was So Ineffective During the Plea Stage That Alimi Entered a Plea That Was Neither Knowing nor Voluntarily Made

A guilty plea is voluntary only "if it is entered by one fully aware of the direct consequences of the plea."[156] Alimi argues first that his plea was involuntary because the change of plea colloquy needed to include an express advisement about the Sentencing Guidelines range he would face.[157] Federal Rule of Criminal Procedure ("Rule") 11(b)(1) contains a list of 15 advisements that a defendant must receive before pleading guilty.[158] "Rule 11 does not require that the court inform the defendant of the probability of his receiving one sentence or another. Indeed, it is improper to do so."[159] Further, a court is not required to give an advisement "of the applicable offense level and criminal history category under the Sentencing Guidelines prior to accepting [a defendant's] guilty plea."[160]

---

[155] *See* Dkt. 118 at 27.

[156] *Brady*, 397 U.S. at 755.

[157] Dkt. 118 at 13.

[158] Fed. R. Crim. P. 11(b)(1).

[159] *Lewis v. United States*, 601 F.2d 1100, 1101 (9th Cir. 1979).

[160] *United States v. Turner*, 881 F.2d 684, 687 (9th Cir. 1989), *overruled on other grounds by United States v. Rodriguez-Razo*, 962 F.2d 1418 (9th Cir. 1992).

29

Here, the Court reviewed the factual basis for the Plea Agreement in open court.[161] Alimi affirmed his understanding, even offering corrections.[162] A review of the plea hearing transcript reveals the Court carefully adhered to the requirements of Rule 11, asking and receiving Alimi's unequivocal assertion that he wished to plead guilty, after reviewing the written Plea Agreement and reviewing orally the contents in court.[163] Accordingly, this argument fails to convince the Court Alimi's plea was not entered knowingly and voluntarily.

Alimi also asserts that his plea was not knowingly and intelligently made because he was "induced" to plead guilty based on the specific drug quantity in the Plea Agreement's factual basis: 4,363 pills of oxycodone.[164] He argues that because he was unaware and uninformed that the drug proceeds could be converted into additional drug quantities for sentencing purposes, his plea was not knowing and voluntary.[165] However, as previously stated, Alimi was aware of the sentencing range recommended in the PSR, he was aware of and attested to his understanding of the facts in the factual statement of the Plea Agreement, and he was informed the Court was not bound by any parties' sentencing recommendation. Additionally, at the change of plea hearing, the Court assessed his ability and understanding, proceeded through the Rule 11 colloquy, and informed Alimi of the maximum sentence he may face and that the Court was not bound by the

---

[161] *See* Dkt. 106 at 14–27.

[162] *See id.*

[163] *See id.*; Dkt. 26 at 17.

[164] Dkt. 118 at 12.

[165] *Id.* at 12–13; Dkt. 156 at 11.

30

recommendations of parties. Accordingly, based on a review at this stage, it appears that Alimi's plea was entered knowingly and voluntarily.[166]

Finally, Alimi appears to argue that the Court failed to properly inquire into his English language skills and that he was improperly denied the assistance of an interpreter or document translation.[167] In Alimi's Notice of Intent to Continue and to Not Withdraw Plea, Alimi informed the Court that because "English is not his first language, he did not understand what it was that he in fact had ple[aded] guilty to[.]"[168] However, a review of the record sufficiently demonstrates that Alimi is a fluent English speaker. For example, during the change of plea colloquy, done in adherence with Rule 11, the Court repeatedly inquired whether Alimi understands and comprehends English and whether he understood the PSR.[169] Alimi's responses on the record and

---

[166] *See Brady*, 397 U.S. at 756–57 ("Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision.").

[167] Dkt. 118 at 3–4. Notably absent from Alimi's attached Declaration is any mention of an inability to comprehend the terms of the Plea Agreement or any other communications—save a statement that his agreement contained the overly broad an unclear phrase: "'purchased in part with the proceeds." Dkt. 118-4 at 2.

[168] Dkt. 56 at 1.

[169] Dkts. 106 at 6; 156-1 (Reply Attachment) at 7; *see* 118; *see also United States v. Bigman*, 906 F.2d 392, 394 n.1 (9th Cir. 1990); *see United States v. Nostratis*, 321 F.3d 1206, 1208–09 (9th Cir. 2003); *see Gonzalez v. United States*, 33 F.3d 1047, 1051 (9th Cir. 1994) (affirming a district court's decision that no interpreter was necessary because, during the Rule 11 plea colloquy, "[t]he defendant's answers were consistently responsive, if brief and somewhat inarticulate, and he only occasionally consulted with his attorney").

*pro se* filings, including the present Motion, evince his English language skills.[170] Further, the Court credits Alimi's declarations made in open court while under oath during the Rule 11 colloquy regarding his language skills over his subsequent testimony years later.[171] Accordingly, the Court is unconvinced by Alimi's argument that Butler's representation was so deficient that Alimi entered a plea that was not knowing and voluntary.

### D. Whether Chaobal Was Ineffective for Failing to File a Motion to Withdraw Alimi's Plea

Alimi argues that his second attorney, Chaobal, was ineffective for not filing a motion to withdraw from the Plea Agreement.[172] Specifically, Alimi argues that after Alimi asked Chaobal to withdraw his plea, Chaobal failed to adhere to Court deadlines and, to "cover his own faults," Chaobal told Alimi to "continue to sentencing" and that the Court would "not follow the PSR's recommendation."[173] After firing Butler and retaining Chaobal as counsel, Chaobal informed the Court that Alimi would pursue a motion to withdraw from the Plea Agreement.[174] However, after further investigation, Chaobal advised the Court that Alimi had decided not to withdraw his plea and to proceed to sentencing.[175]

---

[170] Dkts. 106 at 6; 156-1 at 7; *see* Dkt. 118; *see also Nostratis*, 321 F.3d at 1208–09 (9th Cir. 2003); *Gonzalez*, 33 F.3d at 1051.

[171] *See Nostratis*, 321 F.3d at 1209–10; *United States v. Castello,* 724 F.2d 813, 815 (9th Cir. 1984) ("The court was entitled to credit Castello's testimony at the Rule 11 hearing over her subsequent affidavit."); *see also Shah*, 878 F.2d at 1162 ("'[S]olemn declarations in open court carry a strong presumption of verity.'") (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

[172] Dkts. 118 at 13–14; 156 at 28–30.

[173] Dkt. 118 at 14.

[174] Dkt. 51 (Notice of Intent to Withdraw Guilty Plea).

[175] Dkt. 56.

Case 3:16-cr-00028-TMB   Document 172   Filed 03/17/21   Page 32 of 40

In his Declaration, Alimi states that after informing Chaobal he wished to withdraw his guilty plea, Chaobal did not file the Motion to Withdraw as requested.[176] Instead, Alimi declares, Chaobal filed a "Notice of Intent to Continue and Not Withdraw Plea" against Alimi's wishes and without Alimi's knowledge.[177] Alimi declares Chaobal then told him "'we are just going to continue to sentencing, don't worry, the judge will not follow the PSR's recommendation.'"[178]

In the Notice, Chaobal described that Alimi took issue with, among other things that he had "not understood the sentencing ranges and felt that he had not had adequate consultation with his attorney" and because "English is not his first language, he did not understand what it was that he in fact ple[aded] guilty to[.]"[179] These purported issues notwithstanding, Chaobal represented that he engaged in discussions with the Government about potential new charges, new discovery, and other issues that could arise should Alimi attempt to withdraw his plea.[180] Chaobal informed Alimi of the consequences of withdrawing, and Alimi was able to discuss and deliberate with Chaobal as to the merits of withdrawing before ultimately concluding he should proceed with the plea.[181]

To the extent Alimi argues that Chaobal was ineffective for failing to proceed with attempting to withdraw Alimi's plea, the argument fails. Chaobal explained to the Court why he chose not to pursue the motion to withdraw, specifically pointing to discussions with the

---

[176] Dkt. 118-4 at 3.

[177] *Id.*

[178] *Id.*

[179] *Id.* at 1.

[180] Dkt. 56 at 1–2.

[181] *Id.* at 2.

Case 3:16-cr-00028-TMB   Document 172   Filed 03/17/21   Page 33 of 40

Government about "potential new charges," the likelihood of success on such a motion, "the merits of challenging underlying aspects of the case (i.e., searches, warrants, etc.)[.]"[182] Further, based on the evidence that Alimi could have faced liability for other crimes had he withdrawn his plea, and the Government's agreement not to pursue these charges if Alimi entered into the Plea Agreement may have vanished if Alimi's plea was withdrawn.

Given evidence of the strategic decision Chaobal made to not file a motion to withdraw Alimi's plea and proceed to sentencing, the Court is not inclined to second guess, with the advantage of hindsight an attorney's decision made in consultation with his client.[183] Even if Alimi explained to Chaobal that Butler provided inaccurate or incomplete advice regarding the Sentencing Guidelines ranges and effects, such a claim likely would not have formed the basis for withdrawal given that "it is well established that an erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea."[184] Further, counsel's "[f]ailure to raise a meritless argument does not constitute ineffective assistance."[185] Additionally, Alimi's argument that Chaobal did not notify Alimi he was not withdrawing Alimi's guilty plea[186] is unconvincing given that Alimi then hired new counsel and proceeded to sentencing.

---

[182] *Id.*

[183] *See Strickland*, 466 U.S. at 689.

[184] *United States v. Garcia*, 909 F.2d 1346, 1348 (9th Cir 1990) (citation omitted).

[185] *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir .1985) (citation omitted).

[186] *See* Dkt. 118-4 at 3.

Accordingly, Alimi cannot show that Chaobal was ineffective for failing to withdraw Alimi's plea.[187] Because it appears Chaobal's representation fell within the range of reasonableness, the Court need not analyze whether Alimi was prejudiced by Chaobal's representation.

**E. Whether Gardner Was Ineffective for Failing to Object to and Argue Against Factually Incorrect Sentencing Enhancements**

Alimi also argues that Gardner was ineffective for failing to object to or argue against factually incorrect enhancements under U.S.S.G. §§ 2 D1.1(b)(1) and 2 D1.1(b)(12).[188] In Reply, Alimi also argues Gardner should have moved to withdraw Alimi's guilty plea.[189] In his Declaration, Alimi states that in advance of sentencing, Gardner told Alimi he would "'not get more than 75 months, relax.'"[190]

1. <u>U.S.S.G. § 2 D1.1(b)(1) Firearms Enhancement</u>

The PSR assessed a two point increase in the offense level pursuant to U.S.S.G. §§ 2D1.1(b)(1) because multiple firearms, some recently reported stolen, were recovered from Alimi's residence and from Alpinia Auto.[191] Gardner did not object to this enhancement in the PSR.[192] Alimi also argues that "the firearms were not found in [Alimi's] property or person" and

---

[187] *See Strickland*, 466 U.S. at 688.

[188] Dkts. 118 at 14–17.

[189] Dkt. 156 at 28–30.

[190] Dkt. 118-4 at 3.

[191] Dkt. 76 at 1–2, ¶ 33; *see Garcia*, 909 F.2d at 1349 (U.S.S.G. § 2D1.1(b)(1) "calls for a two point increase in a defendant's base offense level 'of a firearm or other dangerous weapon was possessed during commission of the offense.'").

[192] *See* Dkt. 76 at 26 (noting objections to the PSR).

Case 3:16-cr-00028-TMB   Document 172   Filed 03/17/21   Page 35 of 40

that the only testimony from a witness about the firearms "never connected [Alimi] to the firearms in any way."[193] Commentary to the U.S.S.G. provides that enhancement for weapon possession should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."[194]

At the sentencing hearing, Trooper Miner, witness for the Government, testified that while executing a search warrant on Alpina Auto—which he referred to as Alimi's business—he and other law enforcement officers located six firearms, including one directly under "the cash register at the front desk[.]"[195] The Court heard argument on the proposed enhancement and during the sentencing hearing, Gardner stated that "[t]here is no evidence that there was [sic] ever any guns associated with any of the drug dealing, the pills."[196] When asked by the Court to confirm that the guns were stolen, Gardner responded that yes, the guns recovered from the premises were stolen, but Gardner pointed out than an individual could purchase a gun directly from a private seller without knowing the gun was stolen.[197] Gardner went on to argue that the Government's suggested fourteen-year sentence was too harsh "for a first-time drug offender, with no mandatory minimum sentence, which is pretty close to getting up toward the maximum potential sentence" and "seem[ed] excessive."[198] The record before the Court shows that Gardner *did* object to and argue

---

[193] Dkt. 118 at 14–15.

[194] U.S.S.G. § 2D1.1, application (n.11); *Garcia*, 909 F.2d at 1349.

[195] Dkt. 107 at 17.

[196] *Id.* at 44; Dkt. 118 at 15.

[197] Dkt. 107 at 44.

[198] *Id.* at 44–45.

against the firearms enhancement.[199] Accordingly, Alimi has failed to show Gardner's performance was ineffective in this respect.

### 2. U.S.S.G. § 2 D1.1(b)(12) Premises Enhancement

Next, Alimi argues Gardner was ineffective for failing to argue against the premises enhancement, and that the Court incorrectly applied this enhancement, which increased the base line offense calculation by two points.[200]

> "Among the factors the Court should consider is whether the defendant maintained a premises that are, A, whether the defendant held a possessory interest or owned or rented the premises, and, B, the extent to which the defendant controlled access to or activities on the premise. . . . Manufacturing or distributing a controlled substance need not be the sole purposes for which the premises is maintained, but must be one of the defendant's primary or principal purposes for the premises rather than one of the defendant's incidental or collateral sues of the premises. . . . In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing controlled substances and how frequently the premises was used or maintained by the defendant for lawful purposes.[201]

Based on the record before the Court, there was ample evidence Alimi owned or controlled the premises at Alpina Auto[202] and there is no dispute over the drug dealing activities taking place out of Alpina Auto. Despite Alimi's present contentions that he did not own Alpina Auto,[203] the Government located documentation to the contrary.[204] Further, ownership is not a requirement in

---

[199] Alimi also does not make clear whether he conveyed to Gardner his present position that he "knew nothing of any of the firearms found in the shop[.]" *See* Dkt. 118-4 at 2.

[200] *See* Dkt. 118 at 16–20.

[201] Dkt. 107 at 35–36 (quoting U.S.S.G. § 2 D1.1(b)(12)).

[202] *See, e.g.*, *id.* at 28–29.

[203] Dkt. 118-4 at 2.

[204] *See* Dkt. 107 at 22, 28–29.

Case 3:16-cr-00028-TMB   Document 172   Filed 03/17/21   Page 37 of 40

the language of the applicable enhancement.[205] The premises enhancement was properly raised, and the Court concluded that the two-level premises enhancement should apply.[206]

As to Gardner's performance, he did make some arguments on the record about how car traffic was not necessarily indicative of drug dealing.[207] Alimi fails to identify anything Gardner did wrong or suggest how Gardner should have acted differently. Alimi cannot show that Gardner's performance fell below an objective standard of reasonableness. As a result, the Court need not analyze whether Gardner's performance prejudiced Alimi.

Finally, Alimi's argument in his Reply that Gardner should have moved to withdraw Alimi's guilty plea is without merit for the reasons already discussed herein. Further, Alimi does not even argue he asked Gardner to withdraw his guilty plea.[208]

### F. Alimi Has Not Shown an Evidentiary Hearing Is Necessary

A district court can dismiss a § 2255 motion without an evidentiary hearing if its factual claims can be refuted from "documentary testimony and evidence in the record."[209] Even if the resolution hinges on a matter of credibility, no hearing is necessary if "the district court 'conclude[s] that [a full evidentiary] hearing would not offer any reasonable chance of altering its

---

[205] *See* U.S.S.G. § 2D1.1(b)(12); *see also* Dkt. 107 at 35–36 (noting factors to be considered include whether a defendant had possessory interest or owned or rented the property, and the extent to which a defendant controls access to or activities on the premises).

[206] Dkt. 107 at 37.

[207] *Id.* at 36.

[208] *See* Dkt. 156 at 28–30.

[209] *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988) (per curium); *Miller v. United States*, 339 F.2d 704, 705 (9th Cir. 1964).

Case 3:16-cr-00028-TMB   Document 172   Filed 03/17/21   Page 38 of 40

view of the facts.'"[210] A hearing is likewise unnecessary to resolve claims that "are so palpably

incredible or so patently frivolous or false as to warrant summary dismissal."[211]

Here, the Court concludes an evidentiary hearing us unnecessary because it would provide

no reasonable chance of altering the Court's view of the facts before it.

## V.   CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") is required to appeal a petition brought under 28

U.S.C. § 2255.[212]  Under the federal rules governing § 2255 procedures, "[t]he district court must

issue or deny a certificate of appealability when it enters a final order adverse to the applicant."[213]

Where a petitioner makes "a substantial showing of the denial of a constitutional right," a COA

should be issued.[214] A COA "shall indicate which specific issue or issues satisfy the [substantial]

showing" requirement.[215] This standard requires that the petitioner "'demonstrate that the issues

are debatable among jurists of reason; that a court could resolve the issues in a different manner;

or that the questions are adequate to deserve encouragement to proceed further.'"[216] Here, the

Court concludes that Alimi has failed to demonstrate three of his former counsel rendered

---

[210] *Williams v. Woodford*, 384 F.3d 567, 591 (9th Cir. 2004) (quoting *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)).

[211] *Baumann v. United States*, 692 F.2d 565, 570 (9th Cir. 1982).

[212] 28 U.S.C. § 2253(c)(1)(B); *United States v. Asrar*, 116 F.3d 1268, 1269 (9th Cir. 1997).

[213] Rule 11(a), Rules Governing § 2255 Proceedings.

[214] 28 U.S.C. § 2253(c)(2).

[215] 28 U.S.C. § 2253(c)(3); *Beaty v. Stewart*, 303 F.3d 975, 983 (9th Cir. 2002) ("[A] COA is granted on a claim-by-claim basis.").

[216] *United States v. Greene*, No. 3:09-CR-00053-1-TMB, 2015 WL 13670726, at *1 (D. Alaska Apr. 14, 2015) (quoting *Muth v. Fondren*, 676 F.3d 815, 822–23 (9th Cir. 2012)).

Case 3:16-cr-00028-TMB   Document 172   Filed 03/17/21   Page 39 of 40

ineffective assistance. Nevertheless, the Court concludes Alimi has made a substantial showing of a denial such that the Court will issue a certificate of appealability in this action. Specifically, Alimi has made a substantial showing, such that reasonable jurists could disagree, as to Butler's representation and advisement on Sentencing Guidelines calculations. However, Alimi has failed to make a substantial showing as to any of his other arguments.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that Alimi's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct is without merit. Accordingly, Alimi's Motion at Docket 118 is **DENIED** and the Court will issue a Certificate of Appealability in this case only as to the claim against Butler regarding representation and advisement on Sentencing Guidelines calculations.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 17th day of March, 2021.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE